SWANDALE v. SWANDALE.

1. Under the constitution as amended in 1882, a debtor, if the head of a family, is entitled to a homestead in any lands which he may possess, whether it is, or has been, his family residence or not.
2. Real property in which such debtor had an interest having been sold for partition, he is entitled to a homestead out of his share in the proceeds of the sale.
3. A distributee is entitled to a personal property exemption out of his share (if any) of the intestate's personal estate.
4. While the Court of Common Pleas cannot admeasure and lay off home-

stead, it has jurisdiction to determine the question of right to the exemption claimed, when necessary to the determination of an action properly pending in that court.

Before COTHRAN, J., Greenville, July, 1885.

The case is fully stated in the opinion of this court.

*Mr. A. Blythe,* for appellant.

*Mr. M. F. Ansel,* contra.

October 22, 1886.   The opinion of the court was delivered by

MR. JUSTICE McIVER.   Simon Swandale died sometime in 1884, leaving a will, by which in the first clause he gave all his property, of every kind, to his wife and children (of whom G. Tupper Swandale is one) in equal shares.   His property consisted mainly of a large hotel in the city of Greenville, known as the Mansion House, with the furniture therein, and his private residence and household and kitchen furniture.   By the third clause of his will he directed his executors to sell the property known as the Mansion House, and by the fourth clause he provides that the executors may sell all the remainder of his real estate, and after the whole has been sold he directs that the proceeds be distributed amongst his wife and children as provided in the first clause of the will.   The plaintiff, who is the widow of the testator and his sole qualified executrix, sold the Mansion House for the sum of seventeen thousand dollars and the private residence for the sum of thirty-three hundred dollars, leaving the personal property unsold.

The testator was adjudged, several years before his death, to be a person of unsound mind, and the appellant, G. Tupper Swandale, was duly appointed and acted as his committee, and at the time this action was commenced had not rendered his final account as such committee.   The appellant is the head of a family and was, at the time of the testator's death, as well as before, living with said testator in the dwelling house above spoken of, and continued to reside there until the same was sold.   He has contracted debts to an amount exceeding his interest in his

father's estate, and some of his creditors, having reduced their claims to judgment, levied upon his undivided interest in the real estate before it was sold.

The plaintiff, finding herself embarrassed in the administration of the estate as to the interest of the appellant, brought this action against him, making all his creditors parties, asking, amongst other things, that the appellant be required to account as committee, and that his interest in the estate may be ascertained and determined. The appellant answered, setting up his claim of homestead, which is resisted by his creditors, and this is the only issue presented by this appeal. This claim was rejected by the Circuit Judge, but for what reason does not appear, as only extracts from his decree are given in the "Case." It does appear, however, that the Circuit Judge determined that the interest of the appellant in the real estate must still be regarded as realty, notwithstanding the sale by the executrix, which did not operate as an equitable conversion into personalty; and to this part of the decree no exception has been taken by any of the parties.

It is stated in the "Case" that all of the debts of appellant were contracted "since the first of January, 1880," and as the amendment to the homestead clause of the constitution of 1868 was not adopted until December 13, 1880, this statement would leave it uncertain whether the question in this case was to be determined under the provision of the constitution of 1868, or under the amendment of 1880. This uncertainty has, however, been removed by the written admission of counsel, herewith filed, to the effect that all the debts were contracted since the constitution was amended, and therefore the question is to be determined under the homestead clause as it now reads. That clause is as follows: "The general assembly shall enact such laws as will exempt from attachment and sale, under any mesne or final process issued from any court, to the head of any family residing in this State, a homestead in lands, whether held in fee or any lesser estate, not to exceed in value one thousand dollars, with the yearly products thereof; and every head of a family, residing in this State, whether entitled to a homestead exemption in lands or not, personal property not to exceed in value the sum of five hundred dollars." In pursuance of this constitutional man-

date the general assembly did, on December 24, 1880 (17 *Stat.*, 513), enact a law declaring the exemption in the language just quoted from the constitution.

It is very obvious that this language differs very materially from that employed in the original constitutional provision. There the language used is : "The family homestead of the head of each family residing in this State, such homestead consisting of dwelling house, out-buildings, and lands appurtenant," &c. This language indicates that the property intended to be exempted has already acquired the character of "the family homestead," which is defined to be "the dwelling house, out-buildings, and lands appurtenant," while the language of the constitution as it now reads is altogether different. It does *not* indicate that the property intended to be exempted has already acquired the character of *the* family homestead, but on the contrary the words are, "*a* homestead in lands"—that is, a place for a homestead, which either may or may not be the dwelling house, for it is not defined as such in the constitution now of force, as it was in the original constitutional provision.

There must have been some reason for this very marked change in the phraseology used in the provision intended to secure this exemption, and we can conceive of none other than to remove the restriction by which the exemption was confined to a specified part of the debtor's property, and leave it altogether undefined and 'unrestricted except by its value. Under this view of the constitution as it now reads, when a debtor sets up a claim of homestead, it is not at all important to inquire whether such debtor has, or ever had, a family residence or dwelling house. If he has lands, he is entitled, under the express terms of the constitution, to claim *a* homestead in such lands, whether he ever lived on them or not; for there is nothing now to restrict the exemption which he claims to "the family homestead" or to "the dwelling house," or any other particular part of his lands.

If, therefore, the interest of the appellant in the proceeds of the sale of the real estate of his father is still to be regarded as realty, notwithstanding the fact that the land has been sold by the executrix for partition merely, as was held by the Circuit Judge without appeal, we see no reason why the appellant may

not claim his homestead exemption in such interest after it has been finally ascertained. It is a mistake to suppose that the appellant's claim of homestead is in the family residence—the family homestead—of the testator, as seems to be assumed in the argument of the counsel for respondent. The question here is whether the appellant is entitled to a homestead exemption *in his share* of his father's real estate, now represented by the proceeds of the sale thereof in the hands of the plaintiff as executrix. No question, therefore, can arise as to whether two homestead exemptions can be claimed *in the same property*. When the share of appellant under the will has been ascertained, it becomes his own exclusive property, and it is in that alone that the exemption can be claimed.

As to the personal property, we do not see how there can be a question. Indeed, the Circuit Judge seems to have disregarded that altogether, under the assumption, which is alleged to be a mistake, that it would be exhausted in the payment of the debts of the testator. If that be so, then, of course, the appellant would be entitled to no share in it, and there would therefore be nothing out of which he could claim the personal property exemption. But if the Circuit Judge was in error in supposing that the personal property would be consumed in the payment of the debts of the testator, then the appellant would be entitled to an interest therein, and out of such interest we see no reason why he could not claim the exemption. This exemption under the amended constitution is not now, as formerly, confined to specified kinds of personal property, but embraces all of that class.

The position taken by respondent that the Court of Common Pleas has no original jurisdiction of a proceeding to lay off a homestead or assign a personal property exemption, while correct and fully sustained by the authorities cited, is not applicable in this case. This is not such a proceeding, but it is an action brought by an executrix to obtain instructions of the court in administering the estate of her testator, and one of the difficulties presented is this claim of homestead. So that for the purpose of effecting the object of the action, it becomes necessary to adjudicate simply *the question of right to the exemption claimed*, leaving it to the proper authority to admeasure and lay off the

particular property to which under such right the claimant may be entitled. See *Munro* v. *Jeter*, 24 *S. C.*, 29.

The judgment of this court is, that so much of the judgment of the Circuit Court as rejects the appellant's claim of homestead be reversed, and that the case be remanded to that court for such further proceedings as may be necessary to carry out the views herein announced.